UNITED STATES *v.* GONDRAND SHIPPING CO., INC. ET AL.

**No. 6286.**—Invoices dated Beograd, Yugoslavia, February 9, 1939, etc.
Certified February 11, 1939, etc.
Entered at New York, N. Y., March 13, 1939, etc.
Entry No. 24207, etc.

Third Division, Appellate Term

(Decided June 24, 1946)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Lamb & Lerch* (*John G. Lerch* of counsel) for the appellees.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This is a dual application filed by the Government for review of the findings of the trial court, sitting in reappraisement, as to the foreign or export value of certain blouses imported from Yugoslavia. The merchandise involved consists of girls' cotton voile blouses, series V–1, invoiced at United States $0.20 each, and appraised at dinars 24 each; children's pure linen dresses, series VII, invoiced at United States $0.26 each, and appraised at dinars 36 each; junior cotton voile blouses, series IV, invoiced at United States $0.26 each, and appraised at dinars 36 each; children's cotton voile dresses, series V–2, invoiced at United States $0.20 each, and appraised at dinars 24 each; and pure linen blouses, series VI, invoiced at United States $0.30 each, and appraised at dinars 41.50 each. ‑

To these invoice prices 15 per centum was added on entry, except as to the articles covered by reappraisements 140579–A and 140781–A, and certain nondutiable charges were deducted on entry except as to the articles covered by reappraisements 140579–A, 140633–A, 140634–A, 140583–A, 140584–A, and 140585–A. The appraised prices were subject to a discount of 5 per centum, packing included.

(239)

Series V–1, girls' cotton voile blouses, were represented by collective exhibit 1; series VII, children's pure linen blouses, by collective exhibit 2; series IV, junior cotton voile blouses, by collective exhibit 3; and series V–2, children's cotton voile .dresses, by collective exhibit 4. No sample of the linen blouses, series VI, was produced.

The trial court found (Reap. Dec. 6196) the evidence produced by the plaintiff established that:

\* \* \* merchandise such as or similar to that here involved was, on or about the dates of exportation herein, sold or freely offered for sale in the country from whence this merchandise was exported; that the principal market for the sale of this merchandise was Belgrade, Yugoslavia; that the price did not vary according to the quantity purchased; and that the prices at which this merchandise was freely offered for sale, and sold for home consumption in Yugoslavia in the ordinary course of trade, were the prices shown for the different items on the various invoices now before me.

The record shows that the appraiser found the correct basis of appraisement to be the foreign value, and there is no evidence before me to overcome this presumptively correct finding of the appraiser. On the contrary, the evidence strongly supports this finding. The record also shows that the prices at which this merchandise was freely offered for sale and sold for exportation to the United States were not higher than the prices for home consumption.

Upon such findings the trial court held that duty should be assessed upon the basis of the entered values in each case.

The Assistant Attorney General duly applied for a review of the findings of the trial court, but thereafter discovered that the trial court regarded a special agent's report which had been marked "Exhibit 8" for identification, but not admitted in evidence, as a part of the record. Upon application of Government, an interlocutory order of remand was granted by this court remanding the case to the trial court with directions to take such further proceedings as would furnish the appellate court with a proper record.

The trial court rendered a memorandum on "Motion to Settle Record on Appeal" as reported in Reap. Dec. 6222, admitting that an innocuous error was made in its decision in stating that four reports from special agents were received in evidence rather than three reports but, as the court did not regard any of the reports as pertinent to the issue before it, held the record to have been previously correctly certified, and ordered the record recertified to the appellate division.

Counsel for the Government contends that the trial court erred in holding that the evidence established that the goods were sold or freely offered for sale in Yugoslavia ·at the prices shown upon the invoices rather than at the prices returned by the appraiser, or that the goods were freely offered for sale for exportation to the United States.

It was further contended that the trial court erred in entering judgment decreeing that the proper dutiable foreign values were the values appearing on the invoices, although holding, because of section 503 (a)

of the Tariff Act of 1930, that duty shall be taken upon the basis of the entered values; that error was made in directing the collector to take duty upon the entered value in reappraisements 140579–A and 140781–A in the absence of evidence to establish why 15 per centum was not added by the importer as in the remainder of the entries before the court.

It was further contended that the trial court erred in holding that exhibit 8 for identification deals primarily with the cost of production and with questions of fraud and in not finding that it also contains pertinent, relevant, and material matter, and in not issuing an order admitting said exhibit for identification as an exhibit, and according it proper consideration and weight, and directing the clerk to so recertify the record.

The record before us is a voluminous one including many exhibits. We believe from a careful examination of the record, as detailed below, that the foreign values, as contended for by the importer, have been fully established.

Bela K. Erdoss, who in 1939 was general manager of Jugo-Vez A. D., the exporter herein, testified he was familiar with the market in 1939 and 1940; that he was the originator of the merchandise in Yugoslavia and to his knowledge there was no one other than Jugo-Vez A. D., manufacturing and selling in Belgrade, the same items or items similar in character to the merchandise in question; that Belgrade is the principal market; that he was selling merchandise such as represented by exhibits 3 and 4 in 1939 and 1940; that there were no restrictions on his Yugoslavian sales; that he sold in Yugoslavia to anyone wanting to buy; that his usual sales ranged from a half dozen to about four dozens; that he made a number of such sales in the home market and also for export to France, England, and the United States; that he sold the junior blouses, collective exhibit 3, for home consumption in lots of one dozen at dinars 11 each, net, which equals $0.26, the invoiced amount; that his sales to the United States were made only to George Horvath, the importer herein, who paid the amount for each item as shown on the invoices, and the manufacturer received such amount, no more or no less, for each item; that he made offers in writing in 1939 and 1940 to firms other than George Horvath in the United States but could not recall the names of any of the prospects; and that he sold better and more expensive blouses to the firm of Ta-Ta in Belgrade.

The witness further testified that he secured affidavits from Yugoslavian customers who had actually made purchases from him. These affidavits were admitted in evidence as collective exhibit 5. The affidavit of Lazar D. Ljubinovich in the Yugoslavian language was marked "A" and the translation "A–1." The affidavit of Miodrag L.

Jovanovich in the Yugoslavian language was marked "B" and the translation "B-1."

The translation, A-1, is a letter to Jugo-Vez A. D., certified to before a notary public, confirming that the affiant was buying from Jugo-Vez A. D., women's blouses of voile with national embroidery, marked series IV, and paying dinars 11 per piece.

The translation, B-1, is a letter to Jugo-Vez A. D., under stamp and seal of a notary, confirming that the affiant was buying women's blouses with national embroidery on marquisette and known as series IV and paying 11 dinars per piece. The witness recalled that J. L. Jovanovich bought this type of merchandise from him and that the goods were sold at the usual wholesale prices.

On behalf of the Government a report of S. J. Kennedy, Treasury attaché, dated October 31, 1939, at London, England, was admitted in evidence as exhibit 6. Another report from the same attaché dated at London, England, November 15, 1939, was admitted as exhibit 7. A report of S. Brumer, Treasury representative, dated November 6, 1939, at Paris, France, was marked for identification as exhibit 8, subject to the production of the original exhibits accompanying the report which were written in German, it being agreed that the report would be admitted in evidence upon production of said exhibits. It was later agreed, however, at the suggestion of the trial judge, that the further admission of documentary matter be dispensed with and the case closed. An additional report of S. Brumer, dated at Paris, France, April 23, 1940, was admitted in evidence as collective exhibit 9.

Exhibit 6 discloses that E. Horvath, brother of George A. Horvath, the importer herein, was managing director of D. & M. Gates, Ltd., and E. Horvath, Ltd., of London, England; that the firms were engaged in selling, among other things, blouses in England; that these firms bought completely finished blouses from Jugo-Vez A. D. for resale in Great Britain; that the relationship was as buyer and seller only; that E. Horvath had no interest in his brother's business and vice versa; that neither firm ever bought any cloth for the account of George A. Horvath, nor sold cloth to him, and the same was true as to Jugo-Vez A. D., and that E. Horvath had no knowledge of the cost of the blouses shipped or sold by Jugo-Vez A. D. to G. A. Horvath, nor as to the source of the cloth from which the blouses were made.

Exhibit 7 deals with an investigation as to whether there was a fraudulent undervaluation of blouses shipped by Jugo-Vez A. D. to George A. Horvath, in that the value of the cloth was not included in the prices appearing on the invoices. The information contained in this report was obtained from Mr. Bela K. Erdoss, the managing director of Jugo-Vez A. D., and is substantially as follows: The merchandise shipped to George A. Horvath was made from Japanese voile purchased prior to 1937 from Mitsui & Co., London, by D. & M.

Gates, Ltd., for the account of Fonal & Himzoipar of Budapest, Hungary. The cloth is in an unfinished condition and is shipped to De Gordon & Co., Gaiss, Vorarlberg, Austria.

The latter firm finishes the cloth for the account of Fonal & Himzoipar and then ships it to Jugo-Vez A. D., who purchases the cloth outright from said Fonal & Himzoipar, paying for it in any currency available.

The business relationship between Jugo-Vez A. D. and George A. Horvath is that of buyer and seller only. Each transaction is an outright sale and neither firm has any financial interest in the other.

Four exhibits were attached to the report, being in the form of typed and unsigned letters, apparently copies of originals, showing a confirmation of verbal agreements made in December 1938 and January 1939 for the purchase of blouses, series IV, V–1, V–II, and V–1 at the prices stated in the invoices. The original letters were stated to be in the files of Jugo-Vez A. D. The prices shown were, according to Mr. Erdoss, the actual selling prices, including all material, labor, overhead, and profit, packing and freight to port, usually Dubrovnik.

By reason of the laws restricting the importation of materials into the country of manufacture of the blouses, explanation was made on the invoices to the effect that the voiles were the property of D. & M. Gates, Ltd., and the prices on the invoices represented what the manufacturer was being paid for making the blouses for Gates' account. The itemized costs of production of series IV, V–1, and V–II, including a 10 per centum overhead and 15 per centum profit, was shown to equal 26 cents for series IV and 20 cents for series V–1 and VII.

Mr. E. Horvath told the customs attaché that upon the first interview he failed to admit having knowledge of the actual facts concerning the voiles, and now explained that all of the voiles which Jugo-Vez A. D. purchased from Fonal & Himzoipar were obtained from Mitsui & Co. in 1935 and 1936 by the placing of orders with the Mitsui firm in London, the prices being c. i. f. London or Hamburg. Payment for these voiles was usually made on the arrival of the goods at London or Hamburg. The customs attaché examined the ledger accounts of D. & M. Gates showing payments to Mitsui & Co. made from August 12, 1935, to November 19, 1936, thus tending to verify the statements of Mr. Horvath.

The report of Treasury Representative Brumer, marked in evidence as exhibit 9, in addition to the report, contains 99 exhibits. From exhibit 2 therein, a letter written by George A. Horvath to Bela Erdoss, it appears that the importer herein was endeavoring to obtain evidence of sales in the home market in order to be relieved from depositing 15 per centum additional duty.

Exhibits 3 to 40 were carbon copies of sales made by Jugo-Vez A. D. in the home market, including the sale of series IV blouses. Exhibits 41 to 72 were registered letters addressed to the buyers, as shown upon exhibits 3 to 40. These letters had been returned by the postal authorities as nondeliverable. Exhibit 73 is a letter written in the English language to the Treasury representative upon the letterhead of Ta-Ta and signed by a member of that firm. Exhibit 74 is another letter from the Ta-Ta firm, written in English to S. Brumer.

Exhibit 75 is a document written entirely in a foreign language, presumably a sale by Ta-Ta of "Markiset blusa art. 'Jadron'." Exhibits 75A to 89 are photostatic copies of invoices. Exhibit 75A, 76, 77, and 78 are Jugo-Vez A. D. invoices to Ta-Ta, of "Jadron" voile and "markizet bluze" at "36 less 5%" each, the invoices being dated from March 21 to July 23, 1938. Exhibits 79 to 88 are bills of sale from Narodni Vez to Ta-Ta of "Jadron markizet" blouses at 35 dinars less 5 per centum, and one sale of "markizet haljinicas" at 24 dinars each. Exhibit 89 is a bill of Miroslav Benetkovic to Ta-Ta of "zenskih markizet bluza, Vas artikl 'Jadron' " at 35 dinars, less 3 per centum.

Exhibit 90 is a document entitled "Affidavit" of Milorad Jovanovic, sworn to before Treasury Representative S. Brumer. The affidavit is written entirely in the English language, certifying in effect that the affiant is in the ready-to-wear business, wholesale and retail manufacturers, and sells national embroidered blouses similar to a sample submitted to him by Brumer which was marked "Exhibit A"; that said sample is the product of home workers in the country districts; that commissionaires supervise and inspect the work and receive a commission; that during 1938 and 1939 up to the present war, the basic cost price of blouses was dinars 30 per blouse without the addition of the affiant's expenses and profit; that 15 dinars per blouse was the cost of the work and the yarn; that he contracted a purchase of 2,000 blouses from Jugo-Vez A. D. on April 9, 1937, at 36 dinars per blouse, less 5 per centum and resold to Ta-Ta at 43 dinars each.

Exhibits 91 to 97, inclusive, are invoices of Jugo-Vez A. D. to Jovanovic Kosta of voile "Bluza" designation VI at dinars 36 less 5 per centum. Exhibit 98 is a document entitled "Affidavit" signed and sworn to by Madame Gizella Brajkovic before Treasury Representative Brumer. The document is written entirely in the English language. Therein she states that she was a commissionaire making ladies' voile blouses embroidered by home workers, and acts for Jugo-Vez A. D. and has so acted since the firm began business in 1937; that she received dinars 6.50 per blouse, divided as follows: for embroidery 3.00, labor for smock 2.50, commission 1.00, total 6.50; that Jugo-Vez A. D. supplied the yarn for the embroidery and the blouses are already sewn; that to make identical blouses such as are made for Jugo-Vez A. D., she would charge for large quantities not less than

dinars 14.50 per blouse, the cost of the voile being extra. The affiant also stated:

The blouses which are made under my supervision in Yougoslavia and exported to the United States by Yougo-Vez, A. D. are of a unique type, and are similar in quality, workmanship, value, and in all other respects to the standard cheap blouses which are sold in the home market by chain store TATA and other retail firms at the retail price of Dinars 50.00/Fifty Dinars/ and upwards. The difference consists merely in the design of the embroidery.

From the foregoing affidavits and investigation Treasury Representative Brumer concluded that the manufacturer invoiced the junior ladies' blouses at a price of $0.26 equal to dinars 11.50, when the same article was valued in the home market at dinars 36, less 5 per centum; that such invoicing was accomplished through the submission of fictitious invoices of sales and that there was more than a 100 per centum undervaluation of the merchandise.

In rebuttal of this statement in Treasury Representative Brumer's report and to refute the documentary evidence therein, Bela K. Erdoss was recalled to the stand and additional documentary evidence on behalf of the plaintiff was admitted in evidence. The witness testified that he knew Gizella Brajkovic, who signed the document designated as exhibit 98, and part of exhibit 9 herein; that she was one of the first women who worked for him; and that to his knowledge the only language she speaks is Serbian.

The witness also obtained an affidavit from her. The affidavit together with the English translation thereof was admitted in evidence as exhibit 10. Therein Gizella Brajkovic affirms before a notary public that from 1937 up to May 26, 1940, the date of the affidavit, Jugo-Vez A. D. was sending blouses of marquisette for the purpose of embroidering and smocking, and for such work she was paid dinars 2.50 each.

Three other affidavits submitted by the witness were also admitted in evidence. Riza Suchermann certified before a notary public that since 1936 up to May 24, 1940, the date of the affidavit, she was regularly receiving women's blouses, stitched and stamped, to be worked for embroidering and smocking, and that she received dinars 2.50 for the work performed on each blouse. This affidavit written in a foreign language with its translation attached was admitted in evidence as exhibit 11.

Philip Husinger, tailor, affirmed before a notary public that up to June 7, 1940, the date of the affidavit, he was receiving women's stamped and stitched blouses to be finished by girl workers who did the embroidering and smocking. For such work Jugo-Vez A. D. paid him dinars 2.50 and from such money he paid the working girls the amount agreed between himself and each one of them, and he retained the balance as his commission. This affidavit, written in a foreign lan-

guage, with its translation attached, was admitted in evidence as exhibit 12.

Mica Cikota certified before the clerk of the district court that up until May 27, 1940, the date of the affidavit, she was receiving from Jugo-Vez A. D. large quantities of women's blouses designated as IV for purposes of embroidering and smocking, and for such work she was paid dinars 2.50 each. This affidavit, written in a foreign language with translation attached, was admitted in evidence as exhibit 13.

The witness further testified that he made actual sales in the home market in the years 1938, 1939, and 1940, and he recognized certain invoices (exhibits 3 to 40 with exhibit 9 herein) as having been taken from his files; that these invoices were accounts of actual sales in the home market as made to peddlers who had no fixed place of business; that such inland sales were allowed in the home market and the sales evidenced by the invoices were so made at the prices therein stated; that the selling price included such items as overhead, profit, material, labor, etc.; and that statements made in Treasury Representative Brumer's report that the moneys covering such sales did not appear in any of the company records were untrue. Concerning the return of the registered letters addressed by the Treasury representative to the purchasers shown on these invoices, the witness was of the opinion that the letters were returned because of the political changes occurring in Yugoslavia during the year 1940 and because of the fact that these peddlers had no fixed place of business.

Commenting upon exhibits A, B, and C, accompanying exhibit 9 herein, the witness testified that he sold merchandise like exhibit A; that exhibits B and C were similar to the blouses he produced in the matter of size and material and he was of the opinion that they were about in the same price group as his merchandise but not identical therewith; that he did not know where such blouses were produced as they were not of Jugo-Vez A. D. manufacture; that Jugo-Vez A. D. had no competition in the manufacture of blouses and he knew of no manufacturer other than Jugo-Vez A. D.; that Jugo-Vez A. D. did not sell the blouses to the firm of Ta-Ta; that the firm of Ta-Ta did not deal with Jugo-Vez A. D. in that class of merchandise; and that Ta-Ta bought blouses from Jugo-Vez A. D. designated as "Jadron" which were of a much more expensive type.

A sample of such blouse was admitted in evidence as illustrative exhibit A. It consists of an elaborately embroidered blouse which in no way resembles the blouses embroidered upon the flimsy voile material which are in question here. The witness testified that blouses similar to illustrative exhibit A were sold to Ta-Ta, and that his firm never sold that firm blouses of the types represented by exhibits A, B, or C with exhibit 9; that the "Jadron" blouse is made of a different yarn, is of a different quality of material, and has a different

finish; and that the firm of Ta-Ta is a small establishment and is not in the blouse manufacturing business as indicated by the firm's letters written to Brumer and attached to exhibit 9, as exhibits 73 and 74.

It is interesting to note that exhibits 73 and 74 show that the writer of these letters was well versed in writing American business letters. The letter, exhibit 73, states:

We have the pleasure to submit to you two samples of ladies hand embroidered blouses, which are identical & or similar in quality, workmanship, price, value and all other respects to the blouses which we purchased from Jugo-Vez during the year 1938.

Such blouses are of a standard quality and only differ in design for purposes of variety. The said blouse costs us today Dinars 36.00 net, without accounting for our general expenses and profit.

Exhibit 74 would indicate that Ta-Ta was in the manufacturing business. The letter states:

I confirm to you herewith that we pay at present, as proven to you, Dinars 15.00 for the confection of ladies embroidered blouses 0205/8. In this price is included:

1—Cutting,
2—Thread,
3—Stamping of design,
4—Smock,
5—Embroidery,
6—Cotton yarn,
7—Ironing

and all other work.

We supply the voile cloth for which we pay today Dinars 15.00 per meter with 112 cm. The price for this same voile cloth will be Dinars 17.00 per meter in the future. In 1937/38 the cost of this voile was Dinars 11/12 and in 1939 Dinars 14.00.

The witness further testified that purchases of voile were never made from Gates in London, nor received on consignment from that firm; that Jugo-Vez A. D. manufactured and sold blouses to Gates; and that the voile therein, as well as all of the voile used by the manufacturer, was purchased from Fonalipar in Budapest.

The report, exhibit 8 for identification, is merely a reiteration of Treasury Representative Brumer's reasons for concluding that the prices appearing on the invoices herein represented merely the cost of production of the blouses exclusive of the cost of the voiles. Inasmuch as a full account of transactions between the various parties leading up to the sale of the blouses and dresses to the plaintiff herein is given in exhibit 7 and the details leading up to the conclusion of the Treasury representative that the invoiced values represent a fraudulent cost of production, and the basis used by the appraiser in appraising the merchandise are fully set out in exhibit 9, it is apparent that the inclusion of the exhibit as a part of the evidence in this case would be merely cumulative and would not affect the result reached by the trial court.

It clearly appears that the voiles were purchased by D. & M. Gates, Ltd., from Mitsui & Co. for the account of Fonal & Himzoipar of Budapest, which firm caused the voiles to be sent to De Gordon & Co. in Austria for finishing and subsequent shipment to Jugo-Vez A. D. It is also clear that Jugo-Vez A. D. purchased the completed voiles outright from Fonal & Himzoipar but, because of exchange and other restrictions, and national regulations, it was made to appear, as to export sales, that the prices covered the work only and that the cloth belonged to a foreign concern.

The invoices submitted to Treasury Representative Brumer by the Ta-Ta firm relative to blouses purchased from Jugo-Vez A. D., showing prices comparable with the appraised prices of the merchandise herein, are all of "Jadron" designation. Such blouses were established to be entirely different from the importations in question both in quality and workmanship, and not a reliable guide as to the price of the imported goods.

The affidavits and letters written in an English style such as would be ordinarily used by an American businessman engenders the inquiry as to whether or not the foreign signers thereof understood the import of the documents, particularly when the facts contained therein are in such conflict with the actual transactions, in some instances conflicting with the affiants' statements written in their own language and sworn to before their own foreign officials. In view of the fact that nothing appears in the record to show that the signers of these affidavits, written in the English language, were fully informed of the contents thereof by someone who was conversant with the English as well as the native language of the signers, and was able to translate to them the contents thereof, we are of the opinion that the court should not give any credence to the same.

This case is on all fours with the case of *United States* v. *Gondrand Shipping Co., Inc.*, Reap. Dec. 5970, 12 Cust. Ct. 345, involving Hungarian voile blouses and dresses similarly embroidered. The same Treasury Representative Brumer rendered reports which were admitted in evidence in that case. There also, an endeavor was made to establish a cost of production which was higher than the invoiced value of the goods. This court there held that the weight of evidence indicated that the values at which the imported articles were freely offered for sale for home consumption and for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade in Budapest, the principal market for such goods in Hungary, were the entered values.

From the evidence before us in this case, we are of the opinion that the foreign value of the merchandise before us is represented by the prices as invoiced, packed, and the export prices are no higher.

For the reasons stated, we therefore make the following findings of fact:

1. That the merchandise herein consists of embroidered voile blouses and dresses and embroidered linen blouses and dresses imported from Yugoslavia.
2. That such or similar merchandise, upon the dates of exportation herein, was freely offered for sale or sold for home consumption in Yugoslavia, in the principal market of Belgrade, in the ordinary course of trade and in the usual wholesale quantities, at prices equivalent to the invoice prices, packed; that the prices did not vary according to the quantity sold, and that the export prices were no higher.

We hold as a matter of law that the proper values of the merchandise herein are as set out in paragraph 2 of our findings of fact.

Judgment will therefore be rendered accordingly, affirming the judgment of the trial court to that extent.